Bette **WYCALIS**, Plaintiff and Appellant,

v.

GUARDIAN TITLE OF UTAH and Warren H. Curlis, its president; City Federal Savings & Loan Association; U.S. Life of Utah, trustee; City Consumer Services, Inc., beneficiary; R.M. Wall; Gary L. Meredith; Lyle G. Meredith; Ed Maas; Randy Krantz; B. Brad Christenson; Debra Christenson; and John Does I through V, Defendants and Respondents.

No. 880030(A)–CA.

Court of Appeals of Utah.

Aug. 29, 1989.

Rehearing Denied Sept. 26, 1989.

Joseph E. Hatch (argued), Garrett and Sturdy, Eric P. Hartman, Salt Lake City, for Krantz and Christenson.

Dallas H. Young, Jr., Sherman C. Young (argued), Ivie & Young, Provo, for Wycalis.

George W. Pratt (argued), David R. Money, Jones, Waldo, Holbrook & McDonough, Salt Lake City, for Guardian Title and Warren Curlis.

Before DAVIDSON, BENCH and ORME, JJ.

## OPINION

ORME, Judge:

Bette Wycalis, formerly the beneficiary under a trust deed, appeals the trial court's entry of summary judgment terminating her action against Guardian Title of Utah, the trust deed trustee, and its president, Warren Curlis. This appeal was consolidated with another which arose from a separate judgment entered in the same case. However, this opinion treats only the Wycalis appeal. We reverse and remand for further proceedings.

## FACTS

In July 1980, Wycalis sold Randy Krantz and Brad and Debra Christenson a parcel of real estate located in Helper, Utah. A promissory note dated July 1, 1980, payable to Wycalis and her mother, Eva Robertson, was delivered to Wycalis as partial payment for the Helper property.[1] The makers of the promissory note were R & C Associates, Krantz, and the Christensons. The note was secured by a standard, short form trust deed dated June 26, 1980. The trust deed, signed only by R & C Associates, was properly executed and created a lien in Wycalis's favor on a parcel of Weber County property owned by R & C Associates. Guardian Title was named as trustee under the trust deed.

Wycalis received payments on the note from August 1980 through December 1982, at which time all payments ceased, leaving the note substantially unpaid. Wycalis then contacted Guardian to enforce her rights under the trust deed. Guardian informed Wycalis that on December 26, 1980, the Weber County property had been reconveyed to the trustor, R & C Associates, pursuant to a request for reconveyance allegedly bearing Wycalis's signature. Wycalis protested this divestment of her security interest in the property. Subsequent investigation revealed that Wycalis's signature had been forged on the request for reconveyance which Guardian had received and relied on in reconveying the trust deed property.

The forged request for reconveyance was acknowledged by a notary who was either duped or corrupted. This document was accompanied by a letter requesting the substitution of a trust deed on different property as security for the promissory note.[2] Wycalis's signature was also forged

---

1. On March 31, 1983, Eva Robertson assigned her interest in the promissory note to Wycalis.

2. Following the reconveyance of the original trust deed and pursuant to the letter's instructions, Guardian recorded the substituted trust deed in favor of Wycalis. This second deed encumbered a parcel of property different from the Weber County parcel initially encumbered. Thereafter, this second trust deed was reconveyed by Guardian after it received yet another forged request for reconveyance. Wycalis does not claim any interest in the property purportedly secured by the subsequent trust deed nor

on this letter. Upon receiving the two forged documents, Guardian did not contact Wycalis to verify her request, nor did it require delivery of the original promissory note or trust deed, although the request for reconveyance recited the note had been paid and erroneously indicated these documents were attached.[3]

Wycalis filed a complaint against Guardian, Curlis, Krantz, the Christensons, and a number of other parties not involved in this or the related appeal. Wycalis claimed that Guardian Title breached its duty as trustee by reconveying the trust deed property and releasing her corresponding security interest based on a forged request for reconveyance. Wycalis also sought a judgment against Krantz and the Christensons for the unpaid balance of the promissory note. The trial court entered summary judgment against Wycalis and in favor of Guardian. The trial court also entered summary judgment in favor of Wycalis and against Krantz and the Christensons for the unpaid balance of the promissory note. As indicated, both judgments have been appealed, but we treat only the former in this opinion.

### PROCEDURAL HISTORY

The procedural history of Wycalis's claim against Guardian is important to an understanding of our decision and merits detailed review.

Prior to Guardian's successful motion for summary judgment, Wycalis filed a motion for partial summary judgment on the question of Guardian's liability. Wycalis claimed Guardian was liable for the loss of her security interest because the reconveyance was unauthorized. She cited several cases in support of her argument. *E.g., Huckell v. Matranga,* 99 Cal.App.3d 471, 160 Cal.Rptr. 177 (1979); *Doyle v. Surety Title & Guar. Co.,* 261 Cal.App.2d 525, 68 Cal.Rptr. 177 (1968); *Jeanese, Inc. v. Surety Title & Guar. Co.,* 176 Cal.App.2d 449, 1 Cal.Rptr. 752 (1959). Guardian's response was, primarily, to distinguish those cases from the instant case, claiming that they involved situations where *no* authorization had been received by the trustee while Guardian had received apparent, acknowledged authorization to reconvey the property. Since "the acknowledgment of a document gives rise to a presumption of its genuineness," Guardian argued, a factual question existed concerning whether the trustee's unquestioning reliance on that document was consistent with the applicable duty of care. Guardian observed that the only case relied on by Wycalis involving a *forged* request for reconveyance was not resolved as a matter of law but instead had been submitted to the trier of fact. *See Stephans v. Herman,* 225 Cal.App.2d 671, 37 Cal.Rptr. 746 (1964). Guardian emphasized the need for "evidence as to the standard of care in the local title company industry" before it could properly be determined that Guardian breached its duty.

Wycalis's response was uncharacteristic of modern litigants. She conceded the validity of Guardian's argument, the inescapable presence of material factual questions, and the corresponding need for a trial. Accordingly, she withdrew her motion.

It was several months later that Guardian filed its own motion for summary judgment, now changing its tack considerably. Guardian argued that it owed no duty to foresee and protect against criminal acts, such as forgery, and that, in any event, it was entitled to rely on the acknowledged request as a matter of law. In her response, Wycalis unfortunately failed to remind the court of Guardian's prior concession of unavoidable factual issues and of the need for standard-of-care-in-the-industry evidence, which had not been offered by Guardian in support of its motion.[4] Nor

---

does she claim any damages arising from its reconveyance.

**3.** The reference to the note being paid and to these documents being attached is curious, not only because they were not attached, but also because a request to *substitute* security is alto-

gether inconsistent with a representation that the note has been paid.

**4.** The record contains two affidavits submitted by Guardian which merit comment in this regard. The first affidavit is that of Craig Thomsen, president of a local title company, which

did Wycalis directly refute Guardian's new legal arguments. Instead, she too changed tack. In essence, her response was that Guardian's new arguments were irrelevant because a forged reconveyance, even if acknowledged, is an absolute nullity. Thus, according to Wycalis, Guardian had, in effect, released the security without any authority whatsoever and was therefore liable for the loss as a matter of law.

It was in this posture of each party asserting its entitlement to judgment as a matter of law that the district court took Guardian's motion for summary judgment under advisement. Thereafter, the district court granted Guardian's motion, concluding that the "great weight" afforded acknowledged documents entitled Guardian to rely on the request in this case since there was no showing that Guardian had any reason to suspect a forgery. The propriety of that disposition is the gravamen of this appeal.

## STANDARD FOR APPELLATE REVIEW OF SUMMARY JUDGMENT

Summary disposition of lawsuits is a valuable and necessary tool in a judicial system such as ours, which strives for the efficient and timely resolution of legal disputes. Granting summary judgment saves the parties and the courts the time and expense of a full-blown trial. *See, e.g., Amjacs Interwest, Inc. v. Design Assocs.,* 635 P.2d 53, 54 (Utah 1981). However, summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Utah R.Civ.P. 56(c). *See, e.g., Ingram v. Salt Lake City,* 733 P.2d 126, 126 (Utah 1987) (per curiam); *Barber v. Farmers Ins. Exch.,* 751 P.2d 248, 251 (Utah Ct.App. 1988); *Briggs v. Holcomb,* 740 P.2d 281, 283 (Utah Ct.App.1987). Appellate courts scrutinize summary judgments under the same standard applied by the trial courts, according no particular deference to the trial court's legal conclusions concerning whether the material facts are in dispute and, if they are not, what legal result obtains. *See, e.g., Madsen v. Borthick,* 769 P.2d 245, 247 (Utah 1988); *Atlas Corp. v. Clovis Nat'l Bank,* 737 P.2d 225, 229 (Utah 1987).

> [W]e consider the evidence in the light most favorable to the losing party, and affirm only where it appears there is no genuine dispute as to any material issues of fact, or where, even according to the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law.

*Themy v. Seagull Enters., Inc.,* 595 P.2d 526, 528–29 (Utah 1979). *See also, e.g., Barber,* 751 P.2d at 251; *Briggs,* 740 P.2d at 283.

Every summary judgment must withstand scrutiny under the foregoing standards, even where a trial court was confronted with cross-motions for such relief. Despite the parties' apparent mutual perception in such situations that the material facts are not in dispute, it does not automatically follow that summary disposition is appropriate.[5] "Cross-motions for summary judgment do not *ipso facto* dissipate factual issues, even though both parties contend ... that they are entitled to prevail

was submitted by Guardian in its opposition to Wycalis's motion for summary judgment but not relied on in support of its own motion. Moreover, Guardian contended that Thomsen's affidavit demonstrated the need for a trial and the impropriety of Wycalis's motion, not that Thomsen's affidavit established the standard of care as a matter of law. The second affidavit is that of Warren Curlis, which is also insufficient to establish the standard of care as a matter of law. Curlis does not attempt to identify any industry standard in his affidavit, but merely states his own personal experience and the fact

that he had not previously encountered a forged request for reconveyance. Thus, these affidavits do not establish that Guardian met the applicable standard of care as a matter of law.

5. Although Wycalis had withdrawn her prior motion for summary judgment and had not technically filed a cross-motion, the situation was essentially one of cross-motions since her response to Guardian's motion was that she, not Guardian, was entitled to judgment as a matter of law.

because there are no material issues of fact." *Amjacs*, 635 P.2d at 55. *See also Diamond T Utah, Inc. v. Travelers Indem. Co.*, 21 Utah 2d 124, 441 P.2d 705, 706 (1968). Rather, cross-motions may be viewed as involving a contention by each movant that no genuine issue of fact exists under the theory it advances, but not as a concession that no dispute remains under the theory advanced by its adversary. *See, e.g., DeStefano v. Oregon Mut. Ins. Co.*, 762 P.2d 1123, 1124 (Utah Ct.App.1988). In effect, each cross-movant implicitly contends that it is entitled to judgment as a matter of law, but that if the court determines otherwise, factual disputes exist which preclude judgment as a matter of law in favor of the other side.

## SUMMARY JUDGMENT IN NEGLIGENCE CASES

■ The summary judgment challenged here disposes of what amounts to a negligence claim by Wycalis against Guardian. *But see* note 9, *infra*. Specifically, Wycalis contends that Guardian breached its duty as trustee under the trust deed in reconveying Wycalis's interest without her actual authorization. As a general proposition, summary judgment is inappropriate to resolve a negligence claim on its merits, and should be employed "only in the most clear-cut case." *Ingram*, 733 P.2d at 126. *See also Apache Tank Lines, Inc. v. Cheney*, 706 P.2d 614, 615 (Utah 1985) (per curiam); *Williams v. Melby*, 699 P.2d 723, 725 (Utah 1985); *Anderson v. Toone*, 671 P.2d 170, 172 (Utah 1983); *Bowen v. Riverton City*, 656 P.2d 434, 436 (Utah 1982). Of particular concern is the precept that "[o]rdinarily, whether a defendant has breached the required standard of care is a question of fact for the jury." *Jackson v. Dabney*, 645 P.2d 613, 615 (Utah 1982). *See also Ingram*, 733 P.2d at 127; *Bowen*, 656 P.2d at 437; *FMA Acceptance Co. v. Leatherby Ins. Co.*, 594 P.2d 1332, 1334–35 (Utah 1979); *Robison v. Robison*, 16 Utah 2d 2, 394 P.2d 876, 877 (1964). Accordingly, summary judgment is inappropriate unless the applicable standard of care is "fixed by

law," *Elmer v. Vanderford*, 74 Wash.2d 546, 445 P.2d 612, 614 (1968); *see also Chicago, Rock Island and Pac. R.R. v. Hawes*, 424 P.2d 6, 10 (Okla.1967), and reasonable minds could reach but one conclusion as to the defendant's negligence under the circumstances. *See Jackson*, 645 P.2d at 615; *Singleton v. Alexander*, 19 Utah 2d 292, 431 P.2d 126, 129 (1967); *English v. Kienke*, 774 P.2d 1154, 1156 (Utah Ct. App.1989). Furthermore, the Utah Supreme Court has held that since summary disposition denies the losing party "the privilege of a trial," art. I, § 11 of the Utah Constitution[6] suggests that "doubt or uncertainty as to the questions of negligence ... should be resolved in favor of granting ... a trial." *Butler v. Sports Haven Int'l*, 563 P.2d 1245, 1246 (Utah 1977). *See also Anderson*, 671 P.2d at 172; *Rees v. Albertson's, Inc.*, 587 P.2d 130, 133 (Utah 1978).

With the foregoing standards in mind, we must determine whether Wycalis's negligence claim was properly resolved by the district court as a matter of law, given the posture of the case.

## IMPROPRIETY OF SUMMARY JUDGMENT FOR GUARDIAN

■ There are two fundamental problems with the summary judgment at issue in this appeal. First, we cannot agree that the standard of care owed by Guardian to Wycalis is "fixed by law" or even conducive to an "as a matter of law" determination, especially in the absence of uncontroverted standard-of-the-industry evidence.

■ It is true that the applicable standard of care in a given case may be established, as a matter of law, by legislative enactment or prior judicial decision. Restatement (Second) of Torts § 285 (1965). *See also Elmer v. Vanderford*, 74 Wash.2d 546, 445 P.2d 612, 614 (1968). Nonetheless, Guardian has not demonstrated that the standard of care owed by a trustee under a trust deed when presented with a request for reconveyance has been established in either of these ways. Thus, we are not convinced that the applicable standard has

---

**6.** Art. I, § 11 is commonly known as the "open courts" provision.

yet been established in Utah "as a matter of law."[7] Accordingly, the standard must be established factually in the course of ultimate resolution of this case, with an emphasis on standard-of-care-in-the-industry evidence.[8]

As discussed above, a trial court may not grant summary judgment and thereby deny the plaintiff a trial on the negligence issue, including resolving the applicable standard of care, unless it correctly concludes that the jury could not reasonably find the defendant's conduct to be negligent.[9] *See also* Restatement (Second) of Torts § 285 comment f at 22 (1965). We hold that a jury could reasonably conclude the standard of care owed by Guardian to Wycalis required more than unquestioning reliance on the forged request, even though apparently acknowledged,[10] as the

**7.** We necessarily reject Wycalis's contention that trust deed trustees are subject to what in essence would be a strict liability standard. In this regard, Wycalis relies on Utah Code Ann. § 57–1–33 (1986), which provides, with our emphasis, that *"[w]hen the obligation secured by any trust deed has been satisfied,* the trustee shall, upon written request by the beneficiary, reconvey the trust property." Wycalis suggests this language means the trustee has no authority to reconvey property while the obligation is unpaid, and if the trust property is reconveyed in such circumstances, the trustee is strictly liable to the beneficiary. Such a construction is at odds with actual commercial practice under which a beneficiary is entitled to have the property reconveyed upon his or her instruction, whether or not the obligation has been paid, either because the beneficiary and the obligor agree to substitute other security, upon receipt of additional consideration, as part of a loan work-out, or simply because the beneficiary feels like it. A reading of § 57–1–33 in its entirety suggests that it is intended to operate only as a procedural guide for trustees. We note that in drafting § 57–1–33 the Legislature was very explicit and went to great lengths to define the duties of the *beneficiary* and the resulting liability for breach of those duties. In light of this observation, we cannot agree that the Legislature intended the first eleven words of § 57–1–33 to impose strict liability on trustees. If such an onerous burden was intended, we think the Legislature would have explicitly said so rather than leave the matter for inference.

**8.** Expert testimony may be particularly helpful in elucidating the standard of care applicable here. Where the average person has little understanding of the duties owed by particular trades or professions, expert testimony must ordinarily be presented to establish the standard of care. For instance, expert testimony has been required to establish the standard of care for medical doctors, *Chadwick v. Nielsen,* 763 P.2d 817, 821 (Utah Ct.App.1988); architects, *Nauman v. Harold K. Beecher & Assocs.,* 24 Utah 2d 172, 467 P.2d 610, 615 (1970); engineers, *National Housing Indust., Inc. v. E.L. Jones Dev. Co.,* 118 Ariz. 374, 576 P.2d 1374, 1377 (Ct.App. 1978); insurance brokers, *cf. Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 682 P.2d 388, 403 (1984) (establishing

standard of care "may require expert testimony"); and professional estate executors. *Estate of Beach,* 15 Cal.3d 623, 125 Cal.Rptr. 570, 542 P.2d 994, 1001 (1975) (en banc). *But see Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.,* 98 Nev. 113, 642 P.2d 1086, 1087 (1982) (expert testimony not required to prove negligence of surveyor).

**9.** Our emphasis on "negligence" analysis should not be taken as an implicit rejection of Wycalis's contention that a trust deed trustee is a fiduciary held to a standard higher than one of ordinary care. On the contrary, courts have recognized that a trust deed trustee is a fiduciary. *See, e.g., McIntyre v. Ticor Title Ins. Co.,* 658 F.Supp. 944, 950 (D.Alaska 1986); *Hoffman v. First Bond & Mort. Co.,* 116 Conn. 320, 164 A. 656, 658 (1933). *See also Spruill v. Ballard,* 58 F.2d 517, 519 (D.C.App.1932) ("trustee named in a deed of trust to secure a loan sustains a fiduciary relation to the debtor as well as the creditor") (cited with approval in *Blodgett v. Martsch,* 590 P.2d 298, 302 (Utah 1978)). Nonetheless, the fiduciary nature of the trustee's responsibility really goes to the standard of care to which a trustee is held, rather than to supplant negligence analysis. *See, e.g., Estate of Beach,* 15 Cal.3d 623, 125 Cal.Rptr. 570, 542 P.2d 994, 1001 (1975) (en banc) (fiduciary held to "more stringent standards," consistent with rule that "[t]hose undertaking to render expert services in the practice of a profession or trade are required to have and apply the skill, knowledge and competence ordinarily possessed by their fellow practitioners under similar circumstances, and failure to do so subjects them to liability for negligence").

**10.** It is of course true that acknowledged documents have a special status in certain contexts. Properly acknowledged documents may be admitted into evidence without other evidence of their authenticity. *See* Utah R.Evid. 902(8). Subject to certain exceptions, *see* Utah Code Ann. § 57–4a–3 (1986), only acknowledged documents are entitled to recordation. Utah Code Ann. § 57–3–1 (1986). It does not necessarily follow, however, that a trust deed trustee can be said to have fully discharged its duty of care in reconveying property in response to a written submission which includes an acknowledged request for reconveyance.

basis for reconveying the beneficiary's interest. In short, Guardian was correct when it asserted, in opposing Wycalis's prior motion for summary judgment, that the standard of care could not be established, as a practical matter, without a trial.

Second, and closely related to the point above, we believe that a jury could also reasonably conclude that Guardian *breached* whatever duty it owed Wycalis even though it relied on an acknowledged document. Although the posture of this case admittedly leaves us with some doubt as to whether Wycalis can convince a jury that she is entitled to prevail, consistent with precedent we resolve that doubt in favor of permitting Wycalis an opportunity to proceed to trial. *See Butler*, 563 P.2d at 1246–47.

## CONCLUSION

The summary judgment is reversed. We remand for trial or such other proceedings as may be appropriate. The parties shall bear their own costs of this appeal.

DAVIDSON and BENCH, JJ., concur.